UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


**ANGELA POWELL,**                                    Case No. 3:13-CV-1216-AC

                              Plaintiff,               OPINION AND ORDER

        v.

**SYSTEM TRANSPORT INC.,**
and **DANNY CANADY,**

                              Defendants.

_____

ACOSTA, Magistrate Judge:

*Introduction*

        This post-judgment matter involves two parties and the interests of their respective insurers:

plaintiff, Angela Powell ("Powell"); Powell's Personal Injury Protection ("PIP") coverage provider,

Allstate, Inc. ("Allstate"); defendant, System Transport, Inc. ("System Transport"); and System

Transport's motor vehicle insurance provider, American Trucking and Transportation Insurance

PAGE 1 - OPINION AND ORDER

Company ("ATTIC").  System Transport filed a motion for entry of partial satisfaction of judgment (the "Motion") in the amount of $24,421.25, which represents the amount ATTIC paid to Allstate to reimburse Allstate for the wage-loss benefits it paid to Powell.  ATTIC made to the payment to Allstate on May 29, 2014, following a May 15, 2014, verdict of $41,131 against System Transport and in Powell's favor.

The Motion raises two issues for the court to resolve.  First, whether System Transport is entitled to partial satisfaction of judgment; and second, if so, whether Powell's attorney fees and costs are to be deducted from System Transport's $24,421.25 payment before partial satisfaction of judgment is entered.  The court concludes that System Transport is entitled to partial satisfaction of judgment in the amount of $16,310.70.

*Background*

On August 9, 2011, Allstate Fire and Casualty Insurance Company ("Allstate") issued Powell an automobile insurance policy (the "Policy"), which included among other coverages personal injury protection ("PIP") benefits.  (July 3, 2014 Berg Decl. ("July Berg Decl.") Ex. 1, at 7.  Relevant to the pending motion, the Policy provides:

**Subrogation Rights**

When **we** pay, an **injured person's** rights of recovery from anyone else for damages **we** have paid become **ours** up to the amount **we** have paid.  However, **our** rights of recovery only apply if the **injured person** has been fully compensated for the loss. The **injured person** must protect these rights and help **us** enforce them.

**Reimbursement Trust Agreement**

When **we** pay any person under this coverage:

1.    **we** are entitled to repayment of the amounts paid by **us** out of the proceeds of any settlement that person recovers from any legally responsible party of

> insurer. **We** are not entitled to repayment until after the person **we** have paid
> under this coverage has been compensated for all damages which that person
> is legally entitled to recover.
>
> 2.    All rights of recovery against any legally responsible party of insurer must be
> maintained and preserved for **our** benefit.
>
> Our rights under this provision are subject to any applicable limitations provided in
> the Utah Insurance Code.

(July Berg Decl. Ex. 1, at 7-8.)

On February 1, 2012, Powell suffered injuries when a semi-tractor and trailer driven by Canady, a System Transport employee, struck Powell's passenger car. On February 28, 2012, Allstate wrote to Powell's lawyer, Greg Byrne, to inform him that "pursuant to the provisions of ORS 742.534 and the terms of our policy, we will negotiate directly with the responsible party and/or their insurance carrier for the recovery of any benefit payments we make on behalf of your client[.]" (December 4, 2014 Berg Email ("First Berg Email") at 3.) Between March 1, 2012, and January 22, 2013, Allstate paid Powell a total of $24,421.25 in wage-loss benefits under the Policy's PIP provision. (June 2, 2014 Berg Decl. ("June Berg Decl.") Ex. 2; June 27, 2014 Byrne Decl. ("June Byrne Decl.") Ex. 1, at 4.)

On June 28, 2013, Powell filed a lawsuit against Canady and System Transport in Multnomah County Circuit Court. (Notice of Removal of Action ("Removal Notice") at 2.) Powell's complaint asserted negligence in various particulars against Canady and included a prayer of approximately $700,000 for wage loss, medical expenses, and pain and suffering.. (Pl.'s Am. Compl. at 3.) Defendants removed the case to this court on the basis of diversity jurisdiction on July 19, 2013. (Removal Notice at 2.)

On October 28, 2013, Allstate filed a complaint in Multnomah County Circuit Court against

PAGE 3 - OPINION AND ORDER

System Transport and Canady "as subrogee for ANGELA POWELL[.]" (December 4, 2014 Byrne

Email ("Byrne Email") at 3.)    In the complaint, Allstate entitled its primary allegations as

"subrogation rights," which allegations it based on its payments "on behalf of their insured for losses

due to the negligence of SYSTEM TRANSPORT and CANADY." (Byrne Email at 4.)  Allstate

asserted that it had "subrogation rights to collect the losses paid to their insured from the liable

parties, SYSTEM TRANSPORT INC. and CANADY." (*Id.*)  The prayer included a request for

"reasonable attorney's fees[.]"  (*Id.* at 6.)

On April 21, 2014, System Transport filed a motions *in limine*, one of which, Motion No.

16, asked the court to preclude Powell from double recovery of wage-loss benefits.  (Def.'s Mot. *in*

*Limine* ("Mot. *in Limine*") at 21).  In that motion, System Transport contended:

> ORS 742.538 entitles an insurance company to the proceeds of any judgment of an
> insured to the extent it provided benefits.  But *only* if the insurance company does not
> exercise its rights under ORS 742.534 to seek reimbursement of PIP funds paid
> directly from the defendants' insurer.  And that is what happened in this case.
> Plaintiff's insurer, Allstate, filed a separate action to recover the amount of PIP
> benefits that it paid to plaintiff.  That case is currently in abatement in Multnomah
> County Circuit Court:  *Allstate Insurance Company, a/s/o Angela Powell v. System
> Transport Inc.; Danny Anderson Canady,* Case No. 1310-15073.  Thus, Allstate has
> expressly elected not to attach itself to plaintiff's claims in this case.

(Mot. in *Limine* at 22.)  This court granted the Motion *in Limine* on May 7, 2014, without opposition

from Powell.  (Order on Mot. *in Limine* ("*Limine* Order") at 14.)

On May 15, 2014, after a trial, the jury returned a verdict for Powell in the amount of

$41,131.00 for wage loss (the "Judgment").  (Verdict.)  On May 29, 2014, System Transport's

counsel tendered a check from ATTIC in the amount of $24,241.25, to Allstate's counsel in the

Multnomah County Circuit Court case, in reimbursement to Allstate for the full amount of wage-loss

benefits Allstate had previously paid to Powell.  (June Berg Decl. Ex. 3.)  Also on May 29, 2014,

PAGE 4 - OPINION AND ORDER

Powell's counsel refused System Transport's attempt to tender $17,031.74 to Powell, the amount System Transport maintained remained unsatisfied after offset for the $24,421.25 paid to Allstate. (June Berg Decl. Ex. 4).

On June 2, 2014, System Transport filed the Motion seeking partial satisfaction of the Judgment in the full amount of the reimbursed wage-loss benefits.

## *Preliminary Procedural Matters*

At the outset, the court must resolve two procedural issues. First, the court must decide whether Powell waived her right to contest System Transport's eligibility for reimbursement. Second, the court must decide whether to apply the state law of Oregon or Utah to this dispute.

I.    Waiver.

System Transport argues that prior to trial Powell waived her right to contest post-trial System Transport's request for partial satisfaction of judgment in the full amount of the $24,421.25 System Transport paid to Allstate, Powell's insurer, after the trial, in reimbursement to Allstate for its wage-loss payment to Powell under Powell's Allstate automobile insurance policy. As support, System Transport cites Powell's failure to oppose defendants' Motion in Limine No. 16, entitled "Motion for an Order Precluding Plaintiff from Double-Recovery for Wage-Loss Damages Already Paid by Plaintiff's PIP Insurer." (Mot. In *Limine* at 21-22.) Defendants asked that the court "issue an order that any award granted to plaintiff for her lost wages shall be reduced post-verdict by the amount of Personal Injury Protection (PIP) benefits plaintiff already received," and "post-verdict, . . . reduce the damages by the amount of PIP benefits already received." (*Id.*) Powell responded that she "does not object to the court's dealing with this issue post-verdict." (Plaintiff's Mot. In *Limine* Response ("*Limine* Response"), at 16.) She addressed none of the legal arguments

PAGE 5 - OPINION AND ORDER

defendants advanced regarding the specific statutory mechanism by which the court make the wage-loss reduction from Powell's verdict.

Waiver is the intentional relinquishment or abandonment of a known right or privilege. *Gordon v. Deloitte & Touche, LLP Grp. Long Term Disability Plan*, 749 F.3d 746, 752 (9th Cir. 2014) (citing *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991) ("Waiver is often described as the intentional relinquishment of a known right")); *see Moore v. Mut. of Enumclaw Ins. Co.*, 317 Or. 235 (1993) (citing *State v. Hunter*, 316 Or. 192, 201 (1993) ("Waiver is the intentional relinquishment or abandonment of a known right or privilege"); *Waterway Terminals v. P.S. Lord*, 242 Or. 1, 26 (1965) ("Waiver . . . is the intentional relinquishment of a known right")). Here, the clear purpose of defendants' Motion in Limine 16 was to secure a pretrial ruling from the court establishing that the court would address the double-recovery issue after trial, so that defendants would not pay Powell's wage loss twice, once to Powell and a second time to Allstate. The court granted that motion: "Plaintiff does not oppose this motion and agrees this issue should be handled by the court after the verdict is rendered." (*Limine* Order at 14.) To grant defendants' motion the court did not need to decide, and did not decide, the statutory arguments defendants advanced in their motion; at most, the court ruled that Powell would not receive a double recovery – a proposition Powell did not then and does not now oppose. The legal arguments defendants raised in the motion in limine were not necessary to granting the motion; thus, Powell did not need to respond to those arguments and waived nothing by not doing so. Thus, by not opposing defendants' motion, Powell did not waive her right to assert the arguments she now makes in opposition to defendants' statutory interpretation regarding the payment of her wage loss as it relates to satisfying the judgment against them.

PAGE 6 - OPINION AND ORDER

System Transport argues that, in opposing the Motion now, Powell is asking the court to revisit the reimbursement issue to reach a contrary result, but the record shows Powell's position on this issue has remained consistent throughout this litigation. Powell correctly points out that in her trial memorandum she acknowledged Allstate is entitled to reimbursement pursuant to OR. REV. STAT. § 742.538 and that in her opposition to the Motion *in Limine* she expressed no objection to the court dealing with PIP reimbursement post-verdict. (Pl.'s Trial Mem. at 6; *Limine* Response at 16.) Powell does not contest System Transport's right to reimbursement; she contests System Transport's application of ORS 742.534 instead of ORS 742.538, to determine the appropriate amount by which to offset the Judgment, and she has consistently asserted this position..

Powell has not intentionally relinquished her right at any point in this litigation to make the arguments she now advances. She clearly differentiated between the statute System Transport relied upon and the statute she asserts controls the reimbursement issue currently at issue. Thus, there was no waiver and she may assert that position now.

## II.    Choice of Law.

System Transport argues that pursuant to the Policy, Utah law controls determination of the reimbursement dispute. (Def.'s Rep. to Pl.'s Suppl. Br. at 2-5.) Powell responds that Allstate already has conceded Oregon law applies, because it paid Powell's medical expenses up to the $15,000 minimum required under Oregon's PIP statute, not the lower $3,000 minimum required under Utah law. (Pl.'s Opp'n Br. at 2-3.) Powell also argues Oregon law applies because Allstate issued the Policy for use in Oregon, as the declaration page of the Policy evidences by listing Powell's Portland, Oregon address. (*Id.*).

\ \ \ \ \

PAGE 7 - OPINION AND ORDER

*A.    Standard.*

Oregon law provides in relevant part:

**Choice of law made by parties.** (1) Except as specifically provided by ORS 15.320, 15.325, 15.330, 15.335 or 15.355, the contractual rights and duties of the parties are governed by the law or laws that the parties have chosen. The choice of law may extend to the entire contract or to part of a contract.

(2) The choice of law must be express or clearly demonstrated from the terms of the contract. In a standard-form contract drafted primarily by only one of the parties, any choice of law must be express and conspicuous.

OR. REV. STAT. § 15.350 (2013).

"When sitting in diversity, [federal courts] apply the choice-of-law rules of the forum state." *Coneff v. AT & T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012). Under Oregon choice-of-law rules the Court must determine as a threshold issue whether there is a material difference between Oregon law and the law of the other forum. *Waller v. Auto-Owners Ins. Co.*, 174 Or. App. 471, 475 (2001). *See also Machado-Miller v. Mersereau & Shannon, LLP*, 180 Or. App. 586, 591 (2002) ("In analyzing a choice-of-law problem, the threshold question is whether the different states' laws actually conflict with each other.") (citing *Lilienthal v. Kaufman*, 239 Or. 1 (1964)). Where no material difference exists between Oregon law and the law of the proposed alternative forum, Oregon courts will apply Oregon law without regard to the relative significance of the relationship between the dispute and the proposed alternative forum. *Waller v. Auto-Owners Ins. Co.*, 174 Or. App. 471, 475 (2001) (citing *Angelini v. Delaney*, 156 Or. App. 293, 300 (1998)). If there is a material difference, the Court must determine whether both states have substantial interests in having their laws applied. *Pulido v. United States Parcel Serv. Gen. Servs. Co.*, 31 F. Supp. 2d 809, 813 (D. Or. 1998)(citing *Dabbs v. Silver Eagle Mfg. Co.*, 98 Or. App. 581, 583-84 (1989)). Finally, if "both

PAGE 8 - OPINION AND ORDER

states have substantial interests, the Oregon Supreme Court has adopted the 'most significant relationship' approach of the Restatement (Second) Conflict of Laws." *Id.* (citation omitted). *See also Portland Trailer & Equip., Inc. v. A-1 Freeman Moving & Storage, Inc.*, 182 Or. App. 347, 358 (2002) ("Oregon has adopted the choice of law . . . 'most significant relationship' test.").

It is the burden of the party advocating the application of a different jurisdiction's law to identify material differences between that jurisdiction's law and Oregon's, and the Oregon courts will apply Oregon law if no party identifies any material distinctions, without regard to whether such distinctions in fact exist. *Angelini*, 156 Or. App. at 300 (where the parties have not identified material distinctions, "it is not [the] obligation [of the courts] to cast around the law of [a proposed alternate forum] in quest of possible material differences"); *Spirit Partners, LP v. Stoel Rives LLP*, 212 Or. App. 295, 303-304 (2007) (court is not obligated to conduct a conflict-of-law analysis in the absence of express identification of material differences between Oregon law and the law of the proposed alternative forum).

Oregon courts routinely enforce choice-of-law provisions, except where it would be unreasonable to do so because the chosen state has no substantial relationship to the parties or application of the chosen state's law would be contrary to fundamental Oregon policy. *Morris v. Zusman*, 857 F. Supp. 2d 1082, 1091 (D. Or. 2012) (citing *Capital One Bank v. Fort*, 242 Or. App. 166, 170-71 (2011)). *See also Indoor Billboard Northwest Inc. v. M2 Systems Corp.*, No. 3:12-CV-01338-BR, 2013 WL 3146850, at *2 (D. Or. June 18, 2013) (Oregon law precludes enforcement of contractual choice-of-law provisions that "[c]ontravene an established fundamental policy embodied in the law that would otherwise govern the issue in dispute") (citing OR. REV. STAT. § 15.355(1)(c)). If the parties have not made a choice of law, or if their choice of law is not effective, then:

PAGE 9 - OPINION AND ORDER

[T]he rights and duties of the parties with regard to an issue in a contract are governed by the law, in light of the multistate elements of the contract, that is the most appropriate for a resolution of that issue. The most appropriate law is determined by:

(1) Identifying the states that have a relevant connection with the transaction or the parties, such as the place of negotiation, making, performance or subject matter of the contract, or the domicile, habitual residence or pertinent place of business of a party;

(2) Identifying the policies underlying any apparently conflicting laws of these states that are relevant to the issue; and

(3) Evaluating the relative strength and pertinence of these policies in:

(a) Meeting the needs and giving effect to the policies of the interstate and international systems; and

(b) Facilitating the planning of transactions, protecting a party from undue imposition by another party, giving effect to justified expectations of the parties concerning which state's law applies to the issue and minimizing adverse effects on strong legal policies of other states.

OR. REV. STAT. § 15.360 (2013).

B.    *The Policy.*

The Policy contains a choice-of-law provision. It states:

**What Law Will Apply**

This policy is issued in accordance with the laws of Utah and covers property or risks principally located in Utah. Subject to the following paragraph, any and all claims or disputes in any way related to this policy shall be governed by the laws of Utah.

If a covered loss to the **auto**, a covered **auto** accident, or any other occurrence for which coverage applies under this policy happens outside Utah, claims or disputes regarding that covered loss to the **auto**, covered **auto** accident, or other covered occurrence may be governed by the laws of the jurisdiction in which that covered loss to the **auto**, covered **auto** accident, or other covered occurrence happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

PAGE 10 - OPINION AND ORDER

(July Berg Decl. Ex. 1, at 3, Dkt. No.103 (emphasis in original)).

C.    *Effectiveness and Enforceability of the Choice-of-Law Provision.*

Because this court is located in Oregon, it applies Oregon's choice-of-law rules to the current dispute, and under those rules Powell and Allstate made an effective choice of law. The Policy includes a choice-of-law provision identifying the law that would govern any dispute between them arising from the Policy or its performance. The Policy's choice-of-law provision satisfies OR. REV. STAT. § 15.350 (2)'s requirements that a contractual choice-of-law provision be express and clear, and it satisfies the additional requirement that it be conspicuous when part of a standard form contract drafted primarily by one of the parties, here, Allstate.

The parties do not dispute that the choice-of-law provision should be enforced, but instead dispute the provision's interpretation on the facts present here. System Transport reads the first paragraph of the Policy's choice-of-law provision as an unambiguous statement that Utah law governs the current dispute, but that interpretation overlooks the second paragraph's effect. Under the second paragraph, if a covered occurrence happens outside Utah, the laws of the jurisdiction in which the loss occurs will govern "if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this." Put another way, Powell and Allstate agreed that Utah law would control the Policy's interpretation unless an occurrence covered under the Policy happened outside Utah. In that event, the parties agreed, the law of the state in which the covered occurrence happened would govern the Policy's application if that state's law would apply where no choice-of-law provision existed.

That contingency is clearly stated in the Policy's choice-of-law provision and it is realized here. Under Oregon's choice-of-law statute, Oregon law applies when a contractual choice-of-law

PAGE 11 - OPINION AND ORDER

provision is absent: ORS 15.360 controls "to the extent that an effective choice of law has not been made by the parties . . . or is not prescribed by [Oregon law]." Thus, under the terms of the Policy, because the covered occurrence happened in Oregon and Oregon law expressly provides that Oregon law applies in the absence of a contractual choice-of-law provision, the Policy's choice-of-law provision dictates that Oregon substantive law applies to the parties' dispute.

The court next determines whether the Policy's choice-of-law provision should be enforced, and the court finds that the provision should be enforced. First, Oregon has a substantial relationship with the parties and with the event giving rise to the current dispute. Powell resided in Oregon at the time of the accident, the accident occurred in Oregon, System Transport's driver was operating in Oregon when the accident occurred, Allstate issued its policy for use in Oregon, and Powell sued defendants in Oregon. Second, applying Oregon law in Oregon creates no conflict with fundamental Oregon policy. Third, although the parties dispute the choice-of-law provision's interpretation, neither party argues the provision is unenforceable.[2]

Accordingly, the court finds that Oregon's PIP statute applies to the parties' dispute.[3]

\ \ \ \ \

---

[2] Furthermore, System Transport has relied on Oregon law throughout this litigation. *(See* Def.'s Mot. for Partial J. as a Matter of Law at 4, May 14, 2014; Mot. at 2-6).

[3] Because the court finds the Policy's choice-of-law provision is enforceable, it need not resolve the question whether Utah law and Oregon law conflict. The court notes, however, that the states' respective PIP laws do not conflict on the fundamental issue here, whether repayment between insurers for PIP payments, including through direct reimbursement, is available. *Compare* UTAH CODE ANN. § 31A-22-309(6)(a)(i) ("the insurer of the person who would be held legally liable shall reimburse the other insurer for the [PIP] payment) *with* OR. REV. STAT. § 742.534 (1) ("every authorized motor vehicle liability insurer whose insured is or would be held legally liable for damages for injuries . . . shall reimburse such other insurer for the [PIP] benefits it has so furnished"). The two states' laws differ only as to the method by which PIP reimbursement is obtained, a difference the court finds is not substantial under Oregon's choice-of-law case decisions.

PAGE 12 - OPINION AND ORDER

*Discussion*

I.      Application of Oregon's PIP Statute to the Allstate Policy.

   A.      *Oregon's PIP Statutory Scheme.*

PIP is a form of no-fault insurance mandated by Oregon law to be included in any motor

liability policy. *State Farm Mut. Auto. Ins. Co. v. Hale*, 245 Or. App 19, 24 (2007). PIP coverage,

including an insurer's recovery of amounts paid to its insured as PIP benefits, is governed by ORS

742.518 - 742.544. *Wanjala v. United States*, CIV. 10-486-AC, 2011 WL 4498826, at *4 (D. Or.

July. 22, 2011) (citing *Mid-Century Ins. Co. v. Turner*, 219 Or. App. 44, 49 (2008)). PIP benefits

include payments for expenses and loss of income. OR. REV. STAT. § 742.520(3) ("Personal injury

protection benefits consist of payments for expenses, loss of income, and loss of essential services

provided in ORS 742.524").

Oregon law provides three methods for insurers to be repaid for amounts they paid as PIP

benefits. *Mid-Century Ins. Co.*, 219 Or. App. at 49. These methods are meant to encourage PIP

providers to make timely payments by providing insurers with several reimbursement mechanisms

for benefits they have paid. *Wynia v. Fick*, 162 Or. App. 365, 369 (1999).

First, ORS 742.534 is the "reimbursement" option. Under that statute, every authorized

motor vehicle liability insurance provider whose insured is or could be held liable for injuries to

another person is required to reimburse the injured person's insurer for PIP benefits paid by that

insurer to the injured person. *Wynia*, 162 Or. App at 370. This statute is the "interinsurer

reimbursement statute, which permits a PIP insurer to seek reimbursement from the tortfeasor's

insurer." *Cal. Cas. Indem. Exch. v. Federated Mut. Ins. Co.*, 251 Or. App. 371, 375 (2012), *review

denied*, 353 Or. 208 (2013).

PAGE 13 - OPINION AND ORDER

Second, if the PIP provider's insured has brought an action to recover damages from the tortfeasor, ORS 742.536 allows the PIP provider to attach a lien to any recovery by the insured for the amount of the PIP benefits, so long as the provider has not sought reimbursement under ORS 742.534. *Cal. Cas. Indem. Exch*, 251 Or. App. at 375. Here, Allstate has not attached a lien for the recovery of any amount. Consequently, this statute cannot apply here.

Third, ORS 742.538 is the "subrogation" option. This section is available only in cases where recovery under § 742.534 is unavailable. *Cal. Cas. Indem. Exch*, 251 Or. App. at 375. This statute provides two options for payment. Under the first option, a PIP provider may recover benefits, to the extent furnished, from the proceeds of any judgment or settlement that may result from the injured person's exercise of any rights of recovery against any person legally responsible for the accident, less the insured's share of the expenses, costs, or attorney's fees incurred by the insured in connection with recovery. *Wynia*, 162 Or. App. at 370. Under the second option, a provider may require the insured to bring legal action against the responsible party for recovery of PIP benefits. The PIP provider supplies the attorney and directs the litigation, even though the action is brought in the name of the insured. Whether invoking § 742.534 for reimbursement or § 742.538 for subrogation, "the terms of the policy" must entitle the PIP insurer to the benefits of the respective section. OR. REV. STAT. §§ 742.534, 742.538.

B.      *The Policy.*

The Policy provides, in relevant part:

**Subrogation Rights**

When **we** pay, an **injured person's** rights of recovery from anyone else for damages **we** have paid become **ours** up to the amount **we** have paid. However, **our** rights of recovery only apply if the **injured person** has been fully compensated for the loss.

The **injured person** must protect these rights and help us enforce them.

(June Byrne Decl. 7 (emphasis in original)).

C.      *Analysis.*

System Transport contends it is entitled to a partial satisfaction of the Judgment in the amount of $24,421.25. Specifically, System Transport argues that "[b]ecause defendant's insurer was obligated to reimburse, and did reimburse, plaintiff's PIP insurer, defendants are entitled to a partial satisfaction in the amount of that payment." (Mot. at 4). System Transport relies on ORS 31.555, which provides for the reduction of a judgment when "judgment is entered against a party who is insured under a policy of liability insurance against such judgment and in favor of a party who has received benefits that have been the basis for a reimbursement payment by such insurer under ORS 742.534."

Powell does not dispute that System Transport is entitled to partial satisfaction of the Judgment, but instead disputes the application of ORS 742.534. Specifically, Powell contends that "[t]he interinsurer reimbursement benefit of ORS 742.534 is not available to Allstate under the terms of that section because Allstate is not 'entitled to reimbursement under [that section] by the terms of the [P]olicy.'" (Pl.'s Suppl. Br. 3, Dkt. No. 100). Instead, Powell contends, subrogation under § 742.538 is the proper mechanism to calculate the amount of System Transport's partial satisfaction. (*Id.*). Powell argues that System Transport is "entitled to partial satisfaction in an amount equal to Allstate's wage benefits ($24,421[.25]) reduced by Allstate's share of plaintiff's attorney fees and costs." (*Id.*).

The Policy gives Allstate the right of subrogation under ORS 742.538, but not the right to reimbursement under ORS 742.534. At least two reasons require this conclusion. First, the Policy's

PAGE 15 - OPINION AND ORDER

only language addressing PIP repayment is entitled "Subrogation Rights". The language in that section makes clear that Allstate's recovery of its PIP payments will come from any damages its insured receives from the liable party, and the language further obligates the insured to protect Allstate's right of recovery.

Second, the section entitled "Reimbursement Trust Agreement" reinforces this interpretation, as it explicitly states Allstate is "entitled to repayment . . . out of the proceeds of any settlement that person recovers from any legally responsible party of insurer." The Policy's language in these respects is consistent with Oregon's PIP subrogation statute, ORS 742.538, which provides that "[t]he injured person shall hold in trust for the benefit of the insurer all such rights of recovery which the injured person has, but only to the extent of such benefits furnished," and "[t]he injured person shall do whatever is proper to secure, and shall do nothing after loss to prejudice, such rights." ORS 742.538(2) and (3). Thus, the Policy's language provides only for subrogation and must be applied consistent with that remedy's principles. *See* OR. REV. STAT. § 742.538(7) ("Any provisions in a motor vehicle liability insurance policy giving rights to the insurer relating to subrogation or the subject matter of this section shall be construed and applied in accordance with the provisions of this section"); *and Mid-Century Ins. Co.*, 219 Or. App. at 44 ("The policy then includes provisions pertaining to subrogation, which, for present purposes, correspond materially to the requirements of ORS 742.538 . . . .").

Even if the Policy contained a right to reimbursement, Allstate failed to satisfy ORS 742.534's requirement of specifically requesting reimbursement from System Transport's insurer. The only reference in the record to reimbursement appears in Allstate's February 28, 2012 letter to Byrne informing him that Allstate will seek reimbursement from "the responsible party," but ORS

PAGE 16 - OPINION AND ORDER

742.534(1) requires the insurer seeking reimbursement to request reimbursement from the liable party's insurer. There is no evidence in the record that Allstate made any such request of System Transport's insurer, and nothing in the statute suggests its requirement is satisfied when the insurer informs its insured, or its insured's attorney, of its intent to seek reimbursement. Furthermore, Allstate's state-court lawsuit against the defendants does not satisfy the requirement, because Allstate filed a lawsuit for "subrogation," as Powell's "subrogee," a distinct theory explicitly and separately provided for under ORS 742.538. Nothing in ORS 742.534 suggests that filing a lawsuit under a subrogation theory against the negligent parties satisfies ORS 742.534(1)'s requirement that a request for reimbursement to the liable parties' insurer.

System Transport contends the Policy does allow for reimbursement and cites *Garrett v. State Farm Mut. Ins. Co.*, 112 Or. App. 539 (1992), to support its contention that the Policy contains a right to reimbursement. Specifically, System Transport argues that Oregon's Personal Injury Protection Act (the "Act") is incorporated into the Policy, thus providing for interinsurer reimbursement in the terms of the Policy. System Transport's reliance on *Garrett* is misplaced.

In *Garrett*, the insured filed a declaratory judgement action against her automobile insurer, State Farm, to recover her attorney's fees incurred in bringing a lawsuit against the negligent party. 112 Or. App. at 541. The policy contained an explicit and specific reference to the Act and to the insurer's right to reimbursement under the Act. 112 Or. App. at 452-43. The insured there argued that the policy's reference to the Act was "essentially the same" as the reference to subrogation contained in the policy at issue in *Allstate Insurance. Co. v. Safeco Insurance Co.*, 99 Or. App. 162 (1989), a reference the court there found did not create a right to reimbursement. *Garrett*, 112 Or. App. at 542-43. The *Garrett* court rejected the insured's contention, noting that in *Allstate*

PAGE 17 - OPINION AND ORDER

*Insurance*, it held the policy there " 'unmistakably describe[d] only subrogration.' " *Garrett*, 112

Or. App. at 543, citing *Allstate Insurance Co.*, 99 Or. App. at 165.

Here, the Policy contains no reference, explicit or implied, to the Act, nor does it contain any

language that creates a right to reimbursement. Rather, the Policy and facts here are very similar to

the policy and facts in the *Allstate Insurance* case, to which both Powell and System Transport cite.

The policy at issue in the *Allstate Insurance* case provided:

> **Subrogation**
>
> Subject to the limitations of Oregon Revised Statutes 743.800 to 743.835,
> when **we** pay, the **insured person's** right of recovery from anyone else
> becomes **ours** up to the amount **we** have paid. The **injured person** must
> protect these rights and help **us** enforce them.

*Allstate Insurance Co.*, 99 Or. App. at 164 (bold face in original). The Oregon Court of Appeals
held:

> The phrasing of the policy unmistakably describes only subrogation [OR.
> REV. STAT. § 742.538], not intercompany reimbursement, and does not show
> that it was intended to entitle plaintiff to the benefit of [OR. REV. STAT. §
> 742.534] . . . [t]hat being so, plaintiff is not entitled to reimbursement . . . by
> the terms of the policy.

*Allstate Insurance Co.*, 99 Or. App. at 164. The determinative language contained in the *Allstate*

*Insurance* policy is almost identical in all material respects to the relevant language in the Policy:

> **Subrogation Rights**
>
> When **we** pay, an **injured person's** rights of recovery from anyone else for damages
> **we** have paid become **ours** up to the amount **we** have paid. However, **our** rights of
> recovery only apply if the **injured person** has been fully compensated for the loss.
> The **injured person** must protect these rights and help **us** enforce them.

(June Byrne Decl. 7 (emphasis in original)).

It follows that because the Policy's language here is similar to that in *Allstate Insurance*, a

similar result is warranted. Accordingly, the court finds that System Transport is not entitled to partial satisfaction of the Judgment on the basis of § 742.534's reimbursement remedy. Instead, System Transport is entitled to partial satisfaction of the Judgment under § 742.538's subrogation remedy, a remedy which requires the court to deduct Powell's attorney fees and costs to determine the amount to be credited to System Transport toward satisfying Powell's judgment.

II.    Allstate's Share of Attorney Fees and Costs under § 742.538.

State law governs attorney fees in diversity cases. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228 (D. Or. 2013) (citing *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009) ("In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law")). Generally, under the "American rule . . . litigants . . . are required to bear the expenses of their litigation unless a statute or private agreement provides otherwise." *Carbonell v. INS*, 429 F.3d 894, 897-98 (9th Cir. 2005). Courts award attorney fees to a litigant "only if a statute or contract authorizes such an award." *Id.* (citing *Swett v. Bradbury*, 335 Or. 378, 381 (2003)).

Here, whether or not Powell's attorney is entitled to fees is not in dispute. The parties disagree as to the amount of Powell's fees and costs that must be deducted from System Transport's previous contribution of wage-loss benefits. Powell's attorney seeks a 59% share of its attorney fees from the jury's award, pursuant to § 742.538, which provides in relevant part:

> The insurer is entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the injured person against any person legally responsible for the accident to the extent of such benefits furnished by the insurer *less the insurer's share of expenses, costs and attorney fees incurred by the injured person in connection with such recovery*

(emphasis added). Powell reads the language in the statute to create a right to fees without a requirement of "reasonableness" for those fees. Specifically, Powell states that "[t]here is no requirement of 'reasonableness' under ORS 742.538; it is simply a mathematical computation." (Pl.'s Opp'n Br. at 6.)

> OR. REV. STAT. § 742.538(5) states in relevant part:
>
> In calculating respective shares of expenses, costs and attorney fees under this section, the basis of allocation shall be the respective proportions borne to the total recovery by:
>
> (a) such benefits furnished by the insurer; and
>
> (b) The total recovery less (a).

Powell is correct that the statute calls for a mathematical computation of the share of expenses for which the parties are liable, and also correct in her calculation of her and Allstate's respective shares. That is, Allstate's share of Powell's attorney fees and costs is 59%. Under ORS 742.538(5), the court must calculate the proportion of PIP benefits furnished by the insurer in relation to the total amount of recovery. Here, the benefits furnished were $24,421.25 in wage-loss benefits. The jury's verdict – Powell's total recovery – was $41,131. Therefore, Powell is responsible for 41% of attorney fees (($41,131.00 - $24,421.25 = $16,709.75)/$41,131.00 = .4062 or 41%), while System Transport is responsible for the remaining 59%. *See Bachman v. Genesis Invs., Inc.*, No. CV-09-1212-HU, 2011 WL 887558, *7 (D. Or. Jan. 21, 2011) (applying ORS 742.538(1)'s mandate as a formula to determine attorney fees).

Powell is incorrect, however, that the reasonableness of attorneys fees and costs is not a factor the court must consider in applying the statute's mandate. Oregon law is clear: attorneys fees

PAGE 20 - OPINION AND ORDER

and costs must be evaluated for reasonableness.  The Oregon Supreme Court has expressly stated

that "[u]nder any conceivable circumstances an insurer who makes a recovery from a third party for

moneys paid its insured is only required to pay attorneys fees which were 'reasonably and necessarily

incurred' to make the recovery." *Ridenour v. Nationwide Mut. Ins. Co.*, 273 Or. 514, 516 (1975).

*See also Strawn v. Farmers Ins. Co. of Or.*, 353 Or. 210, 212 (2013) ("For an attorney fee awarded

either pursuant to a fee-shifting statute or the common fund doctrine, the touchstone for the amount

of the award is the same – reasonableness") (citing OR. REV. STAT. § 742.061(1) (court to fix fee

in "reasonable amount" in action on insurance policy); OR. R. CIV. P. 32 M(1)(c) (court may order

"reasonable attorney fees in class action"); *Strunk v. Pub. Emp. Ret. Bd.*, 341 Or. 175, 183 (2006)

(common-fund doctrine permits award of "reasonable fees" assessed to the fund").

　　　　Powell, as the party seeking fees "bears the burden of documenting the appropriate hours

expended in the litigation and must submit evidence in support of those hours worked." *MW

Builders, Inc. v. Safeco Ins. Co. of Am.*, 2009 WL 1161751, *3 (D. Or. 2009) (citing *Gates v.

Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)).  The "district court possesses 'considerable

discretion' in determining the reasonableness of a fee award." *Id.* at *2 (citing *Webb v. Ada Cnty.*,

195 F.3d 524, 526 (9th Cir. 1999)).  Thus, "[w]here the documentation of hours is inadequate, the

district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Furthermore, the court evaluates the party's fee request in light of the degree of success attained by

the attorney for the client. *See McGinnis v. Ky. Fried Chicken of Cal.*, 51 F.3d 805, 810 (9th Cir.

1994) ("It is an abuse of discretion for the district court to award attorneys' fees without considering

the relationship between the 'extent of success' and the amount of the fee award") (citing *Farrar v.

Hobby*, 503 U.S. 103 (1992)).  And, the court is required to evaluate the reasonableness of fees to

PAGE 21 - OPINION AND ORDER

prevent inequitable results, regardless of the difficulty in achieving an exact result. *See Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) ("We hold, however, that the impossibility of making an *exact* apportionment does not relieve the district court of its duty to make *some* attempt to adjust the fee award in an effect to reflect an apportionment") (emphasis in original).

Here, Powell's Notice of Claim of Attorney Lien presents a lump sum of $34,147, not an itemized report as required by Local Rule 54. (Notice of Claim of Att'ys Lien.) Powell has not provided evidence to prove that the amount of attorneys fees and costs was reasonably incurred in her quest to recover lost wages, instead informing the court only that "the agreed fee in this case is manifestly reasonable by any standard. As the fee was contingent, no time records were kept." (Pl.'s Br. on Atty. Fees at 4.) As to costs, Powell provided the court with a one-page summary of costs and expenses. (October 27, 2014 Byrne Decl. Atty. Fee Issue ("Oct. Byrne Decl.") Ex. 6.) This summary, however, does not distinguish between costs incurred in pursuit of Powell's successful wage claim and her other abandoned or unsuccessful claims.

A.    *Attorneys' Fees.*

Powell's attorney contends that "[m]onetarily, the fee agreement entitles the undersigned to a fee of $16,452 . . ." (Pl.'s Br. on Atty. Fees at 3.) He argues that Powell's fee agreement "entitles two experienced lawyers to [the amount] for spending over two years preparing her case for trial." (*Id.*) It is "inconceivable," says Powell's attorney, "that anyone would contend such a fee is unreasonable." (*Id.*)

The court finds the fees in this case unreasonable for three reasons. First, the degree of success by Powell's attorneys achieved for Powell does not justify the fees requested. The Court has consistently held that "'the most critical factor' in determining the reasonableness of a fee award 'is

PAGE 22 - OPINION AND ORDER

the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Courts are required to evaluate an award of attorney's fees in light of the success achieved for the attorney's client. *McGinnis*, 51 F.3d at 810. To do so, courts "give primary consideration to the amount of damages awarded as compared to the amount sought." *Riverside v. Rivera*, 477 U.S. 561, 585 (1986).

Here, Powell's initial complaint alleged economic and non-economic damages totaling $693,784. At the conclusion of the trial, the jury awarded Powell $41,131.00 for her injuries. Thus, in comparison to the desired result, Powell recovered 6% of what she originally sought.[4] Conversely, Powell's counsel seeks a total of $37,291.25 in attorney's fees, costs, and expenses. Should Powell's attorney receive that amount, his fees and expenses would equate to roughly 91% of the Judgment.[5] Even without factoring in alleged costs and expenses, Powell's requested attorney's fees equate to roughly 40% of the judgment.[6] The figures demonstrate the disparity between the fees and expenses incurred and the result obtained..

Second, Powell's counsel has not provided the court with an adequate account of the time spent on this case, nor has he provided an account of the portion of time spent specifically on Powell's successful claim. The Supreme Court has been clear:

> [w]here settlement is not possible, the applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise "billing judgment" with respect to hours worked . . . and should maintain billing time records in a manner that will allow a reviewing court to identify distinct claims. We reemphasize that the district court has discretion in determining the amount of the fee award.

---

[4] $41,131.00 Judgment/ $693,784 Damages Sought = .059%

[5] $37,291.25 Desired Attorney's Fees and Costs/ $41,131.00 Judgment = .906%

[6] $16,452 Desired Attorney's Fees/ $41,131 Judgment = .399%

*Hensley*, 461 U.S. at 437. Powell has not met this standard, and her attorney's explanation for not keeping records -- the contingent nature of the case -- is insufficient to excuse this failure.

Third, Powell refused an offer of judgment from defendant prior to going to trial, an offer which more favorable than the jury's award. As a result, litigation was extended and fees and costs were expanded without obtaining a more favorable result. Both the Supreme Court and Ninth Circuit have been clear that a plaintiff's rejection of an offer of judgment is relevant to determine the reasonableness of costs post-verdict. *See, e.g., Delta Air Lines, Inc. v. August*, 450 U.S. 346, 350 (1981) ("The plaintiff's rejection of the defendant's offer becomes significant in such a proceeding to determine costs."); *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1023 (9th Cir. 2003) ("Rule 68 encourages a defendant to offer settlement early because the cost-clock begins running as soon as defendant makes an offer.")). Although not dispositive, Powell's rejection of the offer of judgment in this case is significant because the amount of attorney's fees, costs, and expenses incurred were inflated as a result.

The amount awarded by the jury in relation to the amount sought by Powell, together with the lack of time records and the extension of litigation, require the court to reduce Powell's attorney fees in this case. The method by which to deduct fees is a matter of judicial discretion. *Hensley*, 461 U.S. at 436-37 (" The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success. The court necessarily has discretion in making this equitable judgment."). Here, the court will deduct the attorneys fees by the ratio of economic to non-economic damages sought in the Amended Complaint at the outset of the case. This approach gives credence to the notion that "the most critical factor [in determining fees] is the degree of success obtained." *Id.* at 436.

In her Amended Complaint, Powell sought $193,784.00 in economic damages and $500,000.00 in non-economic damages. Therefore, the resulting percentage by which Powell's attorneys' fees will be reduced is 39%[7], resulting in attorney fees Powell of $6,416.28.[8] As determined previously, Allstate is responsible for 59% of Powell's attorneys' fees. Therefore, the net amount of attorneys' fees for which Allstate is liable is $3,785.60.[9]

B.      Costs.

The parties have agreed to waive costs per Rule 68. (November 6, 2014 Declaration of Robert Barton ("Barton Decl."), Ex. 3.) Under Rule 68, if an offer of judgment is made and subsequently rejected, and the judgment obtained is less favorable than the offer, the offeree must pay the post-offer costs incurred by the offeror. On, May 27, 2014, the parties reached agreement that System Transport would waive its right to post-offer costs if Powell waived her right to pre-offer costs. (Barton Decl., Ex. 3.)

However, at oral argument on November 17, 2014, Powell's counsel noted that while Powell waived her right to costs, she has not waived her right to expenses under ORS 742.538. The statute provides:

> The insurer is entitled to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of the injured person against any person legally responsible for the accident to the extent of such benefits furnished by the insurer less the insurer's share of *expenses, costs and attorney fees* incurred by the injured person in connection with such recovery.

---

[7] $193,784.00 in economic damages /$500,000.00 in non-economic damages = .387, or 39%.

[8] $16,452 (requested attorneys' fees) x .39 (reduction ratio) = $6,416.28.

[9] $6,416.28 (attorneys' fees) x .59 (portion of fees Allstate is liable for under OR. REV. STAT. § 742.538) = $3,785.605.

PAGE 25 - OPINION AND ORDER

OR. REV. STAT. § 742.538 (emphasis added).  Powell asserted at oral argument that the statute lists both "costs" and "expenses," and thus the two words must encompass distinct and separate categories of recoverable expenditures.

The Supreme Court has held that courts interpreting statutes should give effect to every word included in the statute.  *See Astoria Fed. Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991) ("But of course we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof) (citing *United States v. Menasche*, 348 U.S. 528, 538-39 (1955); *see also Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883) ("It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning and language it employed").  Because a specific definition of "expenses" is not given in the statute, the court will interpret the word "expenses" as those incurred that do not otherwise qualify as recoverable costs under 28 U.S.C. § 1920.

Turning to 28 U.S.C. § 1920, recoverable costs are defined as:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under  section 1828 of this title.

Powell's cost bill totals $20,839.25 in costs and expenses, of which $2,043.30 fall within § 1920's list of recoverable costs.  (October 27, 2014 Declaration of Gregory Byrne ("Oct. 27, 2014 Byrne Decl."), Ex. 5.)  That amount has been waived via the parties' agreement.  The remainder,

PAGE 26 - OPINION AND ORDER

$18,795.95, falls under "expenses" under ORS 742.538. However, for the same reasons the court reduced Powell's attorneys' fees, the court reduces Powell's total expenses by 39%. Thus, Powell is entitled to receive $7,330.42 for expenses[10], of which Allstate's percentage is $4,324.95.[11] Therefore, Powell is entitled to $13,746.70 in attorneys' fees and expenses.[12] Of that total, Allstate is responsible for $8,110.55.

III.    System Transport's Motion for Partial Satisfaction of Judgment.

System Transport asks that the entirety of its $24,421.25 payment to Allstate be credited toward satisfying the jury's $41,131.00 award to Powell, but the above analysis makes clear that full credit is not appropriate. Defendants owe Powell, not Allstate, the $41,131.00 amount the jury awarded her, but defendants' insurer, ATTIC, paid directly to Powell's insurer, Allstate, the full amount of the $24,421.25 PIP benefits Allstate paid to Powell. Powell thus was prevented from retaining the $8,110.55 in attorney fees, costs, and expenses to which she is entitled.

Accordingly, defendants are entitled to offset from the Judgment $16,310.70 of the $24,421.25 its insurer paid to Powell's insurer. Powell is entitled to retain the $8,110.55 difference as attorney fees, costs, and expenses. Any claim System Transport has regarding the difference between the amount of money it paid to Allstate and this offset is outside the scope of the Motion and this opinion.

\ \ \ \ \

---

[10] $18, 795.95 (requested expenses) x .39 (deduction percentage) = $7,330.42 (granted expenses )

[11] $7,330.42 (granted expenses) x .59 (percentage PIP insurer is liable for) = $4,324.947.

[12] $6,416.28 (attorneys' fees) + $7,330.42 (expenses) = $13,746.70.

PAGE 27 - OPINION AND ORDER

*Conclusion*

Defendants are entitled to partial satisfaction of judgment in the amount of $16,310.70.

Dated this 26th day of January, 2015.

JOHN V. ACOSTA
United States Magistrate Judge

PAGE 28 - OPINION AND ORDER